

**INTERNATIONAL CRIMINAL COURT AGAINST CHILD KIDNAPPING**
PROTECTING & ENFORCING THE HUMAN RIGHTS OF THE CHILD

FILED
U.S. DISTRICT COURT

Schenkkade 50
The Hague - 2595 AR          2019 APR 11  □ 12: 54
The Netherlands DISTRICT OF UTAH
Tel:  +31-70-800-2093
Fax: +31-70-808-0254
Email: admin@childabductioncourt.eu
DEPUTY CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH
351 South West Temple, Rm. 1.100
Salt Lake City, Utah 84101
(801) 524-6100

Case: 2:19-cv-00245
Assigned To : Benson, Dee
Assign. Date : 4/11/2019
Description: Schurmann v. Carr et al

Stephan Schurmann,

Plaintiff

VS.

Bradley Carr

and

Jonathan Link Tedrick

and

Jubilie Anqui-Tedrick (NON-CUSTODIAL PARENT)

## COMPLAINT

Comes now the Plaintiff, Stephan Schurmann, Pro Se, bringing fourth the following causes of action under Utah Law against the defendants.  Plaintiff demands a Jury Trial. Damages in this case exceed $75,000.

## JURISDICTION AND VENUE

Venue is properly heard in the U.S. District Court of Utah under U.S. Code § 1332 dealing with diversity of litigants. Specifically:

1. Plaintiff Stephan Schurmann is a citizen of Germany and currently resides in Spain.
2. Defendant Anqui is a citizen of the Philippines and currently resides in Utah.
3. Defendant Tedrick is a citizen of the United States currently residing in Utah.
4. Defendant Bradley Carr is a United States Citizen incorporated and practicing law under the laws and regulations of the State of Utah at the law firm CARR-WOODALL.
5. This case properly resides in Federal Jurisdiction because the damages in question exceed $75,000.

## PARTIES

Plaintiff Stephan Schurmann is the father of minor child D.S.S, a German Citizen, who has been wrongfully retained by Anqui and Tedrick since August 2014, living illegally in the State of Utah with defendants Anqui and Tedrick.

Defendant Anqui is a non-custodial parent and an undocumented immigrant living illegally in the State of Utah. Anqui is concealing the minor child DSS without a legal custody order in her possession and as illegal immigrant is subject to deportation under U.S. immigration laws.

Defendant Tedrick is a United States Citizen residing in Utah, assisting Anqui to conceal and harbor the illegal immigrant minor child DSS.

Defendant Carr is a U.S. Citizen living in Utah. He is a member of the Utah Barr Association and licensed to practice law in the State of Utah.

## NATURE OF THE COMPLAINT

Plaintiff alleges and shall prove that the defendants, individually and as part of a conspiracy, did knowingly, intentionally and maliciously take direct and decisive actions to cause the Plaintiff severe emotional distress in violation of Utah civil statutes.

Further, the Defendants each committed the overt act of extortion against the Plaintiff in furtherance of the conspiracy to inflict emotional distress.

Further, the actions of the defendants have deprived the Plaintiff of his custodial rights to his only born son, DSS. Defendant Anqui is actively involved in criminal custodial interference by a non-custodial parent.

Further, the Defendants, individually and severally, took actions to harass, threaten and intimidate Plaintiff electronically in violation of Utah civil and criminal code **Section 76-6-406 (Title 76 Utah Statutes) defines Extortion:**

## STATEMENT OF FACTS

Plaintiff Schurmann and Defendant Anqui married in 2007 and in 2008 had a son, D.S.S., while residing in the Country of Spain. In 2010, Plaintiff came to the United States with his family. They entered the U.S. legally on a temporary E-2 Entrepreneur Visa after Mr. Schurmann invested nearly $1 million in a construction business. The family settled in Birmingham, Alabama.

Unfortunately, during the severe economic downturn, the construction business in Alabama failed, and the family relocated to the Florida Panhandle to pursue more opportunities and try to sell the factory equipment and machinery to recover the losses of the business.

One of those opportunities came in Pennsylvania, where Mr. Schurmann spent several weeks trying to sell his factory equipment and machinery and ultimately to return to Marbella, Spain, the legal domicile of the family. In his absence, Anqui began an adulterous affair with Tedrick.

Anqui initiated divorce proceedings in Okaloosa County Florida Circuit Court in December, 2014. In February 2015 and before the proceedings were complete – it's important to note that Mr. Schurmann returned



www.childabductioncourt.eu

immediately to Marbella, Spain to the family's legal domicile to file a Petition under The Hague Convention for the wrongful retention of his child.

While in Utah, Defendants Anqui and Tedrick began a campaign of harassment, threats, emotional abuse and extortion designed to deprive Plaintiff of the custodial rights to his own son. Additionally, Defendants concocted and executed a scheme to extort several hundred thousand dollars from Plaintiff.

In 2017, Anqui and Tedrick hired defendant Bradley Carr, a Utah attorney. Carr, in his role as attorney and under the Color of his authority as a Utah attorney, joined the conspiracy and conducted his own campaign of threats, extortion and intimidation.

## **Count 1 – Intentional Infliction of Emotional Distress**

Plaintiff alleges that the Defendants, individually and severally, in 2015 and continuing until today, embarked on a scheme to cause pain and inflict emotional stress and damage on the Plaintiff. The ultimate goal of this scheme was to deprive Plaintiff of his internationally recognized and constitutionally protected "ne exeat" rights as a custodial parent. Further, Defendants wished to intimidate Plaintiff into silencing or stopping his attempts to defend his rights and the custodial rights of his only son, DSS.

Plaintiff acknowledges that The Utah Courts have imposed limits on the ability of Plaintiffs to receive damages in cases in which there is not an underlying physical injury.

However, the Utah Supreme Court and Appellate Courts have consistently carved out exceptions – reaffirming them over the past half century – in which conduct of a Defendant is so "wanton, intentional" and abhorrent that damages for inflection of emotional distress are warranted.

For example, The Utah Supreme Court in Samms vs. Eccles (358 P.2d 344, 11 Utah 2d 289) found that monetary damages are just *"where the act is willful or malicious, as distinguished from being merely negligent, that recovery may be had for mental pain, though no physical injury results."*

Amplifying that, the Court found:

*"Our study of the authorities, and of the arguments advanced, convinces us that, conceding such a cause of action may not be based upon mere negligence, the best considered view recognizes an action for severe emotional distress, though not accompanied by bodily impact or physical injury, where the defendant intentionally engaged in some conduct toward the plaintiff, (a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality."* (358 P.2d 344, 11 Utah 2d 289).

Plaintiff alleges that the facts of the case outlined below – and supported with electronic communications from the Defendants themselves – prove conclusively that Defendants committed overt and intentional acts so "beyond the standards of decency and morality" outlined by the Court that a Civil lawsuit must be allowed to proceed.



www.childabductioncourt.eu

### A. Overt Acts of the Defendants Anqui and Tedrick

In 2015, after relocating from Florida to Utah, Defendants Anqui and Tedrick initiated and acted upon a scheme to extort at least $250,000 from the Plaintiff, threatening to keep him from ever seeing his son if Plaintiff did not wire the money to a secret, offshore account (Exhibit 1).

Specifically, on April 21, 2015, Anqui sent Plaintiff Schurmann an email (Exhibit 1) stating:

 *"This is a friendly reminder that I am willing to share custody of Sean with you if you are willing to pay me $250,000 to my bank account. ... I am willing to come to Europe with Sean wherever you are and we can continue our divorce proceedings there as long as you pay me $250,000 in advance ..."*

Defendants Anqui and Tedrick continued and escalated their extortion scheme over the next several months, culminating with an October 7, 2015, Anqui faxed ultimate (Exhibit 2) which reads in part:

*This is a confidential offer confirming that I am willing to share custody of Sean with you if you would secure my and Jonathan's financial future and pay us $250,000 to our bank account.*

*Jonathan and I are willing to come and live in Marbella, Spain, assuming that you are willing to sign a consulting agreement with us. This agreement would include an advanced payment of $250,000 to an offshore bank account for our special services to bring Sean to you.*

*You know by now that you can't win in the U.S. court system. You also know that I have Sean under my full control. If you want to see Sean again, I highly recommend that you follow our advice and sign the consulting agreement with us.*

Additionally, Defendant Anqui's assertion that her attorney can "prepare the legal paperwork," strongly indicates the attorney was party to this attempted extortion.

Plaintiff alleges that the actions of Defendants Anqui and Tedrick easily meet the Utah Court's test and were done *(a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality."* (358 P.2d 344, 11 Utah 2d 289).

Utah Civil law defines "outrageous and intolerable" conduct as "conduct that offends generally accepted standards of decency and morality or, in other words, conduct that is so extreme as to exceed all bounds of what is usually tolerated in a civilized community."

The actions of Defendants in this case – to deliberately deprive a man of access to his own son, and to concoct a criminal scheme to dangle him tantalizingly out of reach – is the very definition of "outrageous and intolerable" conduct.

A close examination of the Defendants' own correspondences and the schemes they outline underscore the intentional infliction caused on Plaintiff Schurmann.

For example, Defendants write: *This is a confidential offer confirming that I am willing to share custody of Sean with you if you would secure my and Jonathan's financial future and pay us $250,000 to our bank account."*



Defendants Anqui and Tedrick are asking Plaintiff to secure the "financial future," of the very man who had an adulterous affair with his wife, absconded with his child and broke up the Plaintiff's family. Making matters worse, defendants who are holding Plaintiff's child are clearly using the minor child as a pawn in their criminal scheme, further escalating the Plaintiff's mental pain, anguish and suffering.

The extortion scheme – and deliberate attempt to inflict extreme emotional distress on Plaintiff – continues: *You also know that I have Sean under my full control. If you want to see Sean again, I highly recommend that you follow our advice and sign the consulting agreement with us.*

There can be no more damage to a father than to hear the words "If you want to see Sean again" from the abductors of his own child.

Plaintiff asks for damages in excess of $75,000 against each defendant.

## B. Overt Acts of Attorney Bradley Carr

During the course of 2016 and into 2017, Bradley Carr, a member of the Utah Bar Association and a practicing attorney in Salt Lake City, came to represent Defendants Anqui and Tedrick in various matters involving the parties.

Documented actions Defendants Anqui and Tedrick and their attorney show that their ultimate goal was to deprive D.S.S. of the love and care of his own father, and to deprive Plaintiff of his internationally recognized "ne exeat" rights of custody and access to his child.

Proof of that scheme rests in a vile email sent from Defendant Attorney Bradley Carr to Husband. (Exhibit 3).

On December, 23 2017 Attorney Carr sent an email (Exhibit 3) to Plaintiff Schurmann, threatening very explicitly to change D.S.S.'s name, hide him in an undisclosed location and make sure that he never again sees his child. Since Carr was acting as an officer of the court, and as Counsel to Anqui and Tedrick, this threat apparently comes from Anqui and Tedrick.

The entire email exchange is included in this submission, but we wish to call the Court's attention to some of the most threatening language of the attorney and, presumably, his clients Anqui and Tedrick.

*"I will reach out to your ex wife in January and draw up papers free of charge to terminate your parental rights and have her new husband adopt your son," Attorney Carr, a member of the Utah Barr, wrote. "We will do a confidential name change and there would be no way of tracking down your ex the next time she moves. The entire process only takes me about 45 days."*

Let that message sink in for a minute. The wife's attorney threatened - in direct violation of attorney ethics and state, federal and international law – to kidnap a child and hide him from his own father. There is nothing remotely legal about that threat, and therefore the Plaintiff has also filed complaints with the Utah Bar Association and the Federal Bureau of Investigation.

Plaintiff alleges that the actions of Defendants Anqui, Tedrick and Carr easily meet the Utah Court's test and were done *(a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted*

 www.childabductioncourt.eu

*standards of decency and morality."* (358 P.2d 344, 11 Utah 2d 289).

A closer look of the actions and illegal threats of Defendant Carr against Plaintiff underscores just how outrageous and intolerable actions are the actions of Defendant Carr.

Attorney Carr wrote to Plaintiff: *"I will reach out to your ex wife in January and draw up papers free of charge to terminate your parental rights and have her new husband adopt your son."*

Clearly that sentence was designed solely to intimidate and inflict severe emotional distress on Plaintiff. The very idea that Carr would threaten to take Plaintiff Schurmann's son away and give it to the very man who stole his family is "outrageous" under the legal definitions of the State of Utah and every other definition one can imagine.

Making things worse are the fact that those threats came from an Officer of the Court. The fact that Defendant Carr is a practicing attorney exponentially increased the pain, suffering and distress of Plaintiff because, presumably, Carr would have the expertise and ability to make good on his extortionate and criminal threat.

The intentional and illegal pain and suffering caused by Defendant Carr on Plaintiff Schurmann clearly meet the Utah Supreme Court's standards, to wit: *"(a) with the purpose of inflicting emotional distress, or, (b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality."* (358 P.2d 344, 11 Utah 2d 289).

The record makes clear that Carr's actions, at a minimum, constituted the legal definition "willful blindness." In this case, clearly understood that his client was not legally allowed to be in the United States and was in the process of divorce. Equally clear is that he knew his client was in possession and control of a minor child, D.S.S., who was also living illegally in the United States. Carr also knew – our would have known with even a minimum of inquiry and diligence, that his client had not been awarded legal custody of that minor child.

Yet, in light of this, Carr still intentionally and deliberately sent a menacing and threatening email to Plaintiff Schurmann threatening to take actions to make sure Mr. Schurmann never again saw his own child.

Willful blindness is defined legally as "deliberate avoidance of knowledge of a crime, especially by failing to make a reasonable inquiry about suspected wrongdoing despite being aware that it is highly probable."

In this case Carr a "reasonable inquiry," by attorney Carr would have confirmed the suspected wrongdoing that Anqui is not legally allowed in the United States. A "reasonable inquiry" also would have confirmed that defendant Tedrick was harboring the illegal alien Anqui. And a "reasonable inquiry" would have determined that defendant Anqui did not have legal custody of minor child D.S.S. and therefore was illegally concealing the child from his legal father.

For the above reasons and more that will arise at trial, Plaintiff seeks damages in excess of $500,000 against each of the defendants.

## Count 2 – Extortion

Plaintiff reasserts and realleges that the above outlined actions of all three defendants constitute criminal and civil extortion and reincorporates them into Count 2. Plaintiff seeks damages in excess of $500,000 against each of the defendants.



Utah Criminal Code **Section 76-6-406** (Title 76 Utah Statutes) defines Extortion:

(1) A person is guilty of theft if he obtains or exercises control over the property of another by extortion and with a purpose to deprive him thereof.

(2) As used in this section, extortion occurs when a person threatens to:

(a) Cause physical harm in the future to the person threatened or to any other person or to property at any time; or

(b) Subject the person threatened or any other person to physical confinement or restraint; or

(c) Engage in other conduct constituting a crime; or

(d) Accuse any person of a crime or expose him to hatred, contempt, or ridicule; or

(e) Reveal any information sought to be concealed by the person threatened; or

(f) Testify or provide information or withhold testimony or information with respect to another's legal claim or defense; or

(g) Take action as an official against anyone or anything, or withhold official action, or cause such action or withholding; or

(h) Bring about or continue a strike, boycott, or other similar collective action to obtain property which is not demanded or received for the benefit of the group which the actor purports to represent; or

(i) Do any other act which would not in itself substantially benefit him but which would harm substantially any other person with respect to that person's health, safety, business, calling, career, financial condition, reputation, or personal relationships.

## Count 3 – Harassment

Plaintiff reasserts and realleges that the above outlined actions of all three defendants constitute criminal and civil extortion and reincorporates them into Count 2. Plaintiff seeks damages in excess of $75,000 against each of the defendants.

 www.childabductioncourt.eu

## UTAH LAW IN SUPPORT OF THE COMPLAINT

Under Utah law and Court precedent, intentional infliction of emotional distress consists of four elements:

*(i) the [defendant's] conduct [complained of] was outrageous and intolerable in that it offended . . . generally accepted standards of decency and morality;*

*(ii) [the defendant] intended to cause, or acted in reckless disregard of the likelihood of causing, emotional distress;*

*(iii) [the plaintiff] suffered severe emotional distress; and*

*(iv) [the defendant's] conduct proximately caused [the] emotional distress.*

**To succeed on a claim of intentional infliction of emotional distress, a plaintiff must demonstrate that the defendant:**

*intentionally engaged in some conduct toward the plaintiff,*

*(a) with the purpose of inflicting emotional distress, or,*

*(b) where any reasonable person would have known that such would result; and his actions are of such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality.*

Plaintiff asserts that the known actions of Defendants clearly and unequivocally meet each and every standard of proof to show that Defendants intentionally and wantonly took actions of *"such a nature as to be considered outrageous and intolerable in that they offend against the generally accepted standards of decency and morality."*

In this case, the record is clear that Defendants have willfully and intentionally worked to illegally and immorally separate a father from his son for their own personal and financial gain. A father's bond with his son is sacred, and the actions of all three defendants has, under the laws of Utah and of nature, offended the decency and morality of society.

The suffering and grief of the Plaintiff/Father is immeasurable and overwhelming. After his ex-wife and her boyfriend absconded with Plaintiff's son, he waged a strenuous legal fight to regain his son, only to be thwarted by the unconscionable actions of Defendants at each turn.

Making matters worse, Plaintiff/Father had to return to his native Europe during proceedings – unlike Anqui, he complied with U.S. immigration laws. Defendants Anqui, Tedrick and Carr took advantage of Plaintiff's absence to taunt him with threats and illegally seek money and other considerations, all while threatening that he would never see his son again.

Proof of those allegations are contained clearly and unambiguously in the Defendants' own works and writings.

Plaintiff sees in excess of $75,000 from each defendant for each count.



www.childabductioncourt.eu

## <u>DEMAND FOR JURY TRIAL</u>

For all of the reasons outlined above, Plaintiff asserts that he has easily met the standards to proceed and prevail in an Intentional Infliction of Emotional Distress pleading. Further, Utah Courts have repeatedly ruled that decisions on the merits of such cases must be decided in the Courts and by jurors.

Specifically, in <u>Cabaness v. Thomas, 2010 UT 23, 232 P.3d 486, 499</u>, the Court Found:

'[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.' " <u>Gygi v. Storch, 28 Utah 2d 399, 503 P.2d 449, 450 (1972)</u> (quoting Restatement (Second) of Torts § 46 cmt. h (1965)). However, "[w]here reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." Id."

For the Reasons outlined above and for others to be raised at trial, the Plaintiff respectfully asks for a Jury Trial and for damages against the Defendants, individually and severally.

Because I am unable to travel to the United States to appear in person in the any Court Case in the United States, I, Stephan Schurmann hereby appoint the

**International Criminal Court against Child Kidnapping (ICCACK)**
and the

**United States Criminal Tribunal against Child Kidnapping (USCTACK),**
**With address at: 1717 Pennsylvania Avenue NW - Suite 1025, Washington, DC 20006**
and its contractor:

**Mr. John Holland, DOB 09/10/1962, a U.S. Citizen whose address is: 490 M Street SW Apt. W-503, Washington, D.C. 20024,**

as my true and lawful Attorney-in-Fact to act in my name, place and stead, and on my behalf, and shall have full powers to represent me in regard to the above styled matter.

IN WITNESS WHEREOF, I have executed this complaint, this 28th day of March 2019 in front of an ICCACK officer.

Stephan Schurmann

Signed, Sealed and delivered in the presence of:

_____

Giovanni Marotta – Attorney at Law
International Criminal Court against Child Kidnapping


The foregoing COMPLAINT was acknowledged before me this 28th day of March 2019, by Stephan Schurmann, who has produced a German passport as identification.